## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**FELIX MARTINEZ,** *et al.,*
        **Plaintiffs,**

**vs.**                                   **Case No. 8:03-CV-1197-T-27TGW**

**PAVEX CORPORATION,**
        **Defendant.**
_____/

## ORDER

    **BEFORE THE COURT** is Defendant's Motion for Summary Judgment as to Remaining Claims of Plaintiffs Luis Abrahantes and Alejandro Lluberes (Dkt. 30) and Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment (Dkt. 39).

### Introduction

    Luis Abrahantes and Alejandro Lluberes (collectively "Plaintiffs") allege that Pavex Corporation ("Pavex" or "Defendant") discriminated against them on the basis of their race (Hispanic) by subjecting them to a hostile work environment in violation of 42 U.S.C. § 1981. (Dkt. 13 (Substituted Complaint); Dkt. 21 (More Definite Statement)). Plaintiffs also allege Defendant intentionally inflicted emotional distress upon them and that Pavex should be held vicariously liable for the assaults committed against them by Pavex employee, Terry Overcash. *Id.*

    Defendant moves for summary judgment on all of Plaintiffs' claims. (Dkt. 30). Upon consideration, Defendant's motion is DENIED as to Plaintiffs' hostile work environment claims, GRANTED as to Plaintiffs' intentional infliction of emotional distress claims, and DENIED as to

1

Plaintiffs' assault claims, and.[1]

### Factual Background[2]

During the relevant time period, Pavex operated an asphalt plant which included a site supporting the plant operations. (Turner Aff., ¶ 3). Each day, the superintendent or the plant operator informed the dispatcher how many delivery trucks were needed for the projects planned for that day or the following day. (Turner Aff., ¶ 4). If Pavex did not own enough delivery trucks for the day, dispatcher Faye Turner called trucking companies such as Soil Tech, J&I Trucking Inc. ("J&I"), Margie Wood Trucking, Inc. ("Margie's") and others. (Turner Aff., ¶ 5). Turner did not ask for particular drivers or trucks and did not know ahead of time which drivers would be sent to Pavex. (Turner Aff., ¶ 5). Pavex "simply maintain[ed] a list of approved outside trucking companies that [could] deliver asphalt and call[ed] them the day before the materials [were] needed to find out if they [were] interested and [could] make the deliveries the next day." (Turner Aff., ¶ 5). Pavex did not mind if the trucking companies sent independent truck owners to do the deliveries as long as the drivers had experience hauling asphalt. (Turner Aff., ¶ 5).

Occasionally, work at the plant was cut off which reduced or eliminated the need for asphalt for the remainder of that day. (Turner Aff., ¶ 9). When that happened, the paving foreman informed

---

[1] It appears that Abrahantes has abandoned his claim for tortious interference with an advantageous business relationship, as he did not dispute Defendant's contention in this regard in footnote 1 of Defendant's motion for summary judgment. (Dkt. 30, p. 2, n.1). To the extent that Abrahantes has not abandoned the claim, summary judgment is granted in Defendant's favor. Abrahantes has failed to demonstrate a necessary element of his tortious interference claim, namely, that he experienced a breach or termination of a business relationship as the result of Pavex's interference. *See Anthony Distributors, Inc. v. Miller Brewing Co.*, 941 F.Supp. 1567, 1572 (M.D. Fla. 1996) (citing *Smith v. Ocean State Bank*, 335 So. 2d 641 (Fla. 1st DCA 1976))

[2] All evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1280 (11th Cir. 2004).

the asphalt truck drivers that they were no longer needed on the Pavex worksite that day.  (Turner Aff., ¶ 9). According to Turner, asphalt drivers were aware that "paving work [was] not dependable." (Turner Aff., ¶ 9).

Plaintiffs either owned delivery trucks or leased trucks for making deliveries.  Plaintiffs received delivery assignments from trucking companies such as Montgomery Truck Lines, Inc., J&I, Diamond C, and Margie's. (Abrahantes Depo., 42, 46, 51; Lluberes Depo., 44, 46, 65). Plaintiffs were paid by the trucking companies on an hourly basis. (Abrahantes Depo., 46, 56; Lluberes Depo., 54).  It is undisputed that Plaintiffs were not Pavex employees.

Abrahantes made deliveries to Pavex from 1999 through 2000. (Abrahantes Depo., 125–26). According to Abrahantes, paving foreman, Terry Overcash, offended him by calling him derogatory names such as "fucking Cuban", "Fucking Hispanic people" and "son of a bitch". (Abrahantes Depo., pp. 127-28; 131-32).[3]  While cursing at Abrahantes, Overcash would often throw his hard hat at the ground and hold his shovel in a threatening way, "like he was going to hit [Abrahantes] with the shovel". (Abrahantes Depo., 129, 133).  On one or two occasions, Overcash hit Abrahantes's truck with the shovel.  On at least one occasion, Overcash jumped on the ledge of Abrahantes's truck so Overcash could "scream at [Abrahantes] close to [Abrahantes's] face". (Abrahantes Depo., 134-35).  Abrahantes testified that Overcash would scream and threaten him when "[Overcash] thought, you were going to do something that was not supposed to be done." (Abrahantes Depo., 135).

On  "[f]our or five occasions", Overcash "cut [Abrahantes] off at 11:00 or 11:30 in the

---

[3] Truck driver, Kathy Loy, also called Abrahantes names such as "stupid, fucking Cuban". (Abrahantes Depo., 143-44).  However, Abrahantes did not provide any other details concerning the frequency or duration of Loy's harassing comments.

3

morning to go home." (Abrahantes Depo., 128, 138).  When Abrahantes was sent home from a work site, J&I deducted a charge for the asphalt from his wages. (Abrahantes Depo., 151).  On at least three of the occasions that Overcash dismissed Abrahantes early, Mike Perez assigned Abrahantes to another crew so that he would be paid for a full day by the trucking company. (Abrahantes Depo., 86-87).[4] [5]

Abrahantes experienced "problems" with Overcash "almost every day" and "every time [Overcash] came to the truck."   (Abrahantes Depo., 129, 131).[6]   According to Abrahantes, Overcash did not cause problems for American drivers, such as Charlie and Kathy. (Abrahantes Depo., 130).  Abrahantes felt he was also discriminated against by Charlie Fanz because every chance he could get, Fanz cut Abrahantes off by passing him at high speeds on the road.  (Abrahantes Depo., 144-46).  Abrahantes felt this was discriminatory because it "put you bad with the company". (Abrahantes Depo., 149).  According to Abrahantes, the environment at Pavex made him nervous and feel "very ill, very sick." (Abrahantes Depo., 154).

Abrahantes complained about the harassment to plant operator, Mike Perez, who told area manager, Jim Allen. (Abrahantes Depo., 16).  Abrahantes also complained to a dispatcher named Stanley.  (Abrahantes Depo., 95, 159-65).  After a group of drivers complained, Abrahantes was

---

[4] Abrahantes testified that he was not certain how many times Mike Perez reassigned him to another crew, perhaps, on "three, four, five occasion[s]." (Abrahantes Depo., 87).

[5] Abrahantes testified that on one occasion, Pavex rejected a load of asphalt that driver, Felix Martinez, hauled in Abrahantes's truck. (Abrahantes Depo., 150-51, 159).  J&I subtracted the cost of the load from Abrahantes's wages. (Abrahantes Depo., 151).  Abrahantes testified that he did not know why the load was rejected.  *Id.*  It is unclear from Martinez's testimony whether Pavex's rejection of the load was racially motivated. (Martinez Depo., 147-48).  Turner's affidavit suggests there are legitimate reasons why a load might be rejected. (Turner Aff., ¶ 9).

[6] Abrahantes testified that he did not know specifically how many times Overcash used derogatory language towards him. (Abrahantes Depo., 131).

4

not allowed to make deliveries to Pavex. *Id*. Abrahantes's supervisor, Frank, said they could no longer deliver to Pavex because Pavex said "they didn't want any more Hispanics over there". *Id*. Abrahantes testified that Pavex continued to permit certain Hispanic drivers to make deliveries. (Abrahantes Depo., 160-61). Abrahantes ceased working in December 2000 due to health problems. (Abrahantes Depo., p. 28).

Lluberes did not make deliveries to Pavex everyday. (Lluberes Depo., 235). However, when he made deliveries to Pavex, Overcash was "always insulting" and never said "good morning" or greeted him in any way. "He just came and blew the horn and said, Come on. Come on. Move it." (Lluberes Depo., 166). According to Lluberes, Overcash called him a "Fucking Hispanic" and said "[t]hat fucking Spanish people, they never understand. They never do what they're supposed to do. And, look, they lost the time. These motherfuckers, they don't move." (Lluberes Depo., 71, 162). On one occasion, Overcash took the shovel from the back of Lluberes's truck and smashed his hat on the ground. (Lluberes Depo., 170). Lluberes thought Overcash was going to hit him with the shovel. (Lluberes Depo., 171, 180-81). Overcash called Lluberes "fucking Cuban, son-of-a bitch, fucking Hispanic" and told Lluberes to help pick up the asphalt that had spilled out of Lluberes's truck. *Id*. On that occasion and others, Overcash asked Lluberes to "step down", which Lluberes interpreted as an invitation to fistfight. *Id*. Lluberes was told by other drivers that when Caucasian driver, Charlie Fanz, spilled asphalt nothing was said to him. (Lluberes Depo., 173-74, 182). Lluberes felt Fanz also discriminated against him because Fanz would tell Pavex that Lluberes was driving too slowly. (Lluberes Depo., 196-98).

Lluberes testified that he suffered a stroke because of the "oppression that [he] felt when [he] was working under [Overcash]. . . . [t]he day [he] suffered the stroke, [he] was going to work at

Pavex with [Overcash].  And [he] was under a lot of pressure due to the fact that a few days before

or prior to that, [he] had had an altercation where during which [Overcash] wanted to fight with

[him] or have a fistfight with [him]".  (Lluberes Depo., 18-19).  Lluberes was concerned that he

would have to pay for the asphalt because he was running late and Overcash might not accept his

load. (Lluberes Depo., 18-20).  As a result of the stroke Lluberes lost vision in one eye.  (Lluberes

Depo., 24).

Lluberes complained about Overcash's harassment to plant manager Frank Andre, who

responded, "Yes, I know everything that has been going on. Don't worry about it. Don't pay any

attention." (Lluberes Depo., 123-24, 146-47).  Lluberes also complained to dispatcher Faye Turner,

Mike Perez, and area manager, Don Kesling.  (Lluberes Depo., 104, 219-20, 235-36).  Lluberes felt

these people discriminated against him by failing to respond to his complaints about Overcash.

(Lluberes Depo., 131-32).  According to Overcash, no one from Pavex discussed the complaints of

discrimination with him or disciplined him for discriminatory acts. (Overcash Depo., 206).

Lluberes testified that someone at Pavex wrote on his delivery ticket that he could no longer

work with Overcash or his crew.  (Lluberes Depo., 82-83).  A dispatcher named Susanna told

Lluberes that she could not send him to the Pavex facility because "[Overcash] had asked that

[Lluberes] would not be sent there anymore and that he didn't want [Lluberes] working there

anymore."  (Lluberes Depo., 84).  Thereafter, Lluberes made infrequent deliveries to Pavex when

Overcash was not present.  (Lluberes Depo., 87).

## Applicable Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to

interrogatories, affidavits and admissions on file show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56. The Court must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997). Judgment in favor of a party is proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on the issue before the Court. Fed. R. Civ. P. 56.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. Plaintiff's evidence must be significantly probative to support his claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## Discussion

### 1.   Plaintiffs' Section 1981 Hostile Environment Claims

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).[7] The phrase "make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §

---

[7] Section 1981's protection includes discrimination based on race and "ancestry or ethnic characteristics". *See St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

1981(b).   A defendant who is not the plaintiff's employer may be held liable under § 1981 for

interference with the plaintiff's contractual rights with third parties.   *See Zaklama, M.D. v. Mt. Sinai*

*Medical Center*, 842 F.2d 291, 294-95 (11ᵗʰ Cir. 1988) (holding § 1981 is broad enough to include

situations where the parties do not "occupy a direct employment relationship").

Here, Plaintiffs, who do not have a direct employment relationship with Pavex,  allege they

were subjected to a hostile work environment in violation of § 1981 while delivering asphalt to the

Pavex worksite.   This Court has previously determined that the rationale adopted by the Eleventh

Circuit in *Zaklama* supports the conclusion that § 1981's protection is broad enough to protect a non-

employee subjected to a hostile work environment by a non-employer defendant, even though the

parties do not have a direct employment relationship.   *See Zaklama*, 842 F.2d at 294-95; Dkt. 54, pp.

7-8.  Thus, in order to establish a racially hostile work environment claim under §1981, Plaintiffs

must establish that (1) they belonged to the protected group at issue; (2) they were subjected to

unwelcome racial harassment; (3) the harassment was based upon race; (4) the harassment was

sufficiently severe or pervasive to alter the terms and conditions of employment and create a

discriminatory abusive working environment; and (5) that Pavex is responsible for such environment

under either a theory of vicarious or of direct liability.   *See Miller v. Kenworth of Dothan*, 277 F.3d

1269, 1275 (11ᵗʰ Cir. 2002) (*citing Mendoza v. Borden*, 195 F.3d 1238, 1245 (11ᵗʰ Cir. 1991) (*en

banc*).

Defendant contends summary judgment is proper because the alleged harassment was not

sufficiently severe or pervasive.   In determining whether harassment is sufficiently severe or

pervasive to alter the terms and conditions of employment both an objective and subjective test must

be met.  *See Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 21-22 (1993).   A plaintiff must establish not

only that he or she subjectively perceived the environment as hostile and abusive but also that a reasonable person would perceive the environment as hostile and abusive, considering the totality of the circumstances. *Gupta v. Florida Board of Regents*, 212 F. 3d 571, 583 (11th Cir. 2000). The Supreme Court has identified four factors to consider in determining whether the alleged harassing conduct is objectively severe or pervasive: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Mendoza,* 195 F.3d at 1246 (citations omitted).

### *Frequency, Severity, & Physically Threatening or Humiliating Conduct*

Plaintiffs allege they were subjected to a hostile work environment because Overcash regularly called them insulting names including "stupid fucking Cuban", "fucking Hispanic" and "fucking Hispanic people". On several occasions Overcash yelled racial epithets at them and made threatening gestures, such as throwing his hat on the ground and raising a shovel. On a few occasions, Overcash hit Abrahantes's truck with a shovel and on one occasion, Overcash jumped on the ledge of Abrahantes's truck to yell close to his face. On more than one occasion, Lluberes perceived that Overcash was trying to provoke a fistfight. Both Plaintiffs testified that they feared Overcash might strike them with a shovel. If Plaintiffs' testimony is believed, Overcash threatened them while reprimanding them for dumping in the wrong area or being too slow in the performance

of their deliveries. [8]

While the evidence is not clear regarding exactly how often Plaintiffs made deliveries to Pavex, Plaintiffs have presented evidence that while they were at the Pavex facility, Overcash's use of racial slurs was commonplace and overt. Abrahantes testified that he made deliveries to Pavex from 1999 through 2000 and experienced problems with Overcash "almost every day" and "every time [Overcash] came to the truck." Based upon the record evidence, this Court cannot conclude that Plaintiffs delivered to Pavex infrequently or at irregular intervals. Nor does the evidence support a finding that the harassing comments and gestures amounted to merely a few isolated incidents. Rather, the evidence demonstrates that Plaintiffs complained about the harassment multiple times to different members of Pavex management. "[R]epeated incidents of verbal harassment that continue despite the employee's objections [ ] are indicative of a hostile work environment and not simply some magic number of racial or ethnic insults." *Miller*, 277 F.3d at 1276-77 (quotations and

---

[8] Plaintiffs' allegation that Charlie Fanz discriminated against them by reporting that they drove too slowly was not considered as contributing to a hostile work environment, as Plaintiffs did not provide evidence demonstrating that Fanz's behavior was racially motivated. Likewise, Overcash's use of names such as "stupid", "son of a bitch" or "motherfuckers" was not considered as contributing to a hostile work environment. Harassment not based upon a protected characteristic is generally not actionable. *See McCollum v. Bloger*, 794 F.2d 602, 610 (11th Cir. 1986) ("[p]ersonal animosity is not the equivalent of sexual discrimination and is not proscribed by Title VII"); *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (a plaintiff must establish he was subjected to the harassment because of his protected class; an environment equally harassing for all races does not constitute a hostile work environment).

However, this Court rejects Defendant's suggestion that racial epithets such as "stupid Cuban" and "fucking Cuban" are not objectively offensive because they are commonly experienced at blue collar construction sites. *See Walker v. Ford Motor Co.*, 684 F.2d 1355, 1358-9 (11th Cir. 1982) (racial slurs sufficiently pervasive despite defendant's contention that "nigger-rigged" was a commonly used term in the automobile business for a poorly repaired car and was not personal to plaintiff). While the use of curse words may not be objectively offensive in certain work environments, where, as here, the curse words are coupled with references to race and physical threats and made in connection with criticism of an individual's job performance, a reasonable jury could find the epithets objectively offensive and discriminatory.

citations omitted). At a minimum, reasonable minds could differ regarding the frequency of Overcash's harassing behavior.

Likewise, a reasonable jury could conclude that Overcash's harassment was sufficiently severe. Plaintiffs' testimony that the alleged harassment was imposed upon them in connection with their job performance, as opposed to "simple teasing" or "offhand comments" made in jest or in a joking manner, supports a finding of severe harassment. *See Miller*, 277 F.3d at 1276-77 (racist remarks made in derogatory and intimidating manner while berating Plaintiff about job performance sufficiently severe). While some of the cursing may not have been as objectively offensive as others, the severity of the harassment is based on the totality of the circumstances. When Overcash's frequent use of names like "fucking Hispanic" and "stupid fucking Cuban" are viewed together with his threatening gestures, a reasonable juror could conclude that his conduct was severe. *See Mendoza*, 195 F.3d at 1246 ("courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive").

The evidence also supports a finding that Plaintiffs were humiliated and threatened by Overcash's behavior. Abrahantes testified the harassment made him nervous and made him feel ill. Lluberes testified that Overcash made him very nervous and that his fear of Overcash caused him to have a stroke. Objectively, Overcash's threatening gestures, such as throwing his hard hat, raising his shovel, and hitting Plaintiff's truck with his shovel in front of other co-workers could be viewed by a reasonable jury as physically threatening and humiliating. *See Miller*, 277 F.3d at 1277. Accordingly, viewing the evidence in the light most favorable to Plaintiffs, this Court concludes that a reasonable jury could conclude that the harassing behavior was sufficiently frequent or severe and

11

that it was physically threatening or humiliating.

*Whether the conduct unreasonably interfered with Plaintiffs' job performance*

A much more difficult aspect of this case is determining whether Overcash's harassing behavior unreasonably interfered with Plaintiffs' job performance. Abrahantes testified that on four or five occasions Overcash told Abrahantes to go home at 11:00 or 11:30 in the morning and in turn J&I deducted a portion of his wages. Abrahantes does not, however, demonstrate that Overcash's decision to send him home was racially motivated. Moreover, Abrahantes testified that on at least three and possibly on each occasion that Overcash dismissed him early, Mike Perez reassigned him to another crew so that he would be paid for a full day by the trucking company. While Abrahantes testified that his supervisor told him Pavex did not want Hispanics making deliveries, he also testified that certain Hispanic truck drivers continued to make deliveries to Pavex. Similarly, Lluberes testified that someone at Pavex wrote on his delivery ticket that he could no longer deliver to Pavex. However, he also testified that thereafter he was permitted to make at least a couple of deliveries if Overcash was not present. It is, therefore, unclear what impact or interference, if any, Overcash's behavior had on Plaintiffs' job performance.

Nonetheless, "[t]he Supreme Court has cautioned that harassment need not be shown to be so extreme that it produces tangible effects on job performance in order to be actionable." *Miller*, 277 F.3d at 1277 (*citing Harris*, 510 U.S. at 22). Moreover, in light of the fact that Plaintiffs have demonstrated frequent, severe and humiliating harassment, their testimony concerning Overcash's interference with their job performance, albeit somewhat inconsistent, is sufficient to relegate the issue of whether Overcash's harassment was severe or pervasive to the jury. *See Miller*, 277 F.3d at 1277 ("having established the frequency, severity, and humiliating nature of the conduct,

12

[plaintiff's] failure to establish convincingly how [the harasser's] conduct interfered with his duties is not fatal to his hostile work environment claim, given the totality of the circumstances"); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) (summary judgment is not appropriate "if reasonable minds could differ as to the import of the evidence"). Defendant has not challenged Plaintiffs' hostile work environment claim on any other ground. Accordingly, summary judgment on Plaintiffs' hostile work environment claims is denied.

**2.    Intentional Infliction of Emotional Distress**

In order to prove a claim for intentional infliction of emotional distress, Plaintiffs must establish (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the complained of conduct caused the suffering; and (4) the suffering was severe. *See Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985). Conduct is considered "outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 278; *see also Eastern Airlines, Inc. v. King*, 557 So. 2d 574, 576 (Fla. 1990) (citing § 46, Restatement (Second) of Torts (1965)). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'". *Eastern Airlines*, 557 So. 2d at 576 (*citing* § 46, Restatement (Second) of Torts (1965)).

"The issue of whether or not the activities of the defendant rise to the level of being extreme and outrageous so as to permit a claim of intentional infliction of emotional distress is a legal question in the first instance for the court to decide as a matter of law." *Baker v. Florida National Bank*, 559 So. 2d 284, 287 (Fla. 4th DCA 1990) (citations omitted). Defendant contends summary

13

judgment on Plaintiffs' intentional infliction of emotional distress claim is appropriate because the alleged conduct was not sufficiently outrageous.  This Court agrees.

### Extreme or Outrageous Conduct

The conduct complained of by Plaintiffs, including the use of racial slurs, such as "fucking Cuban", "fucking Hispanic people", and "stupid fucking Cuban" coupled with Overcash's threatening gestures, while undeniably reprehensible, do not meet the high standard imposed by Florida courts for intentional infliction of emotional distress claims.  *See Vance v. Southern Bell Telephone and Telegram Company*, 983 F.2d 1573, n.2 and n.7 (11th Cir. 1993); *Williams v. Worldwide Flight Svcs. Inc.*, 877 So. 2d 869 (Fla. 3d DCA 2004); *Lay v. Roux Laboratories Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980).

In *Vance, Lay* and *Williams*, more severe racially hostile misconduct was deemed insufficient to establish a claim for intentional infliction of emotional distress.  In *Vance*, the plaintiff was suspended, her work was sabotaged, she was "intentionally transport[ed] to the wrong hospital during her nervous breakdown in an effort to cause her further trauma", a noose was hung over her work station and her doctor's request to have her transferred to a different department was refused. *Vance*, 983 F.2d at n.2.  In *Lay*, the defendant launched vicious verbal attacks on the plaintiff, called plaintiff a "nigger", and threatened her with the loss of her job. *Lay*, 379 So. 2d at 452.  In *Williams*, the plaintiff's supervisor called the plaintiff a "nigger" and "monkey", falsely accused the plaintiff of stealing, and constantly threatened plaintiff with termination. *Williams*, 877 So. 2d at 870; *see also Mundy v. Southern Bell Telephone and Telegraph Co.*, 676 F.2d 503, 504 (11th Cir. 1982) (intentional infliction of emotional distress claim dismissed where plaintiff's superiors threatened to "get" plaintiff or destroy his career, transferred him to less desirable job assignments, gave him

unfair negative evaluations and refused to approve reimbursement for legitimate business expenses after plaintiff refused to participate in a scheme to falsify expense vouchers); *Vamper v. United Parcel Service, Inc.*, 14 F.Supp.2d 1301, 1306 (S. D. Fla. 1998) (intentional infliction of emotional distress claim dismissed where, among other acts of hostility, supervisor told employees false story about plaintiff and referred to plaintiff as a "nigger" in Spanish).

Here, Plaintiffs allege that a Pavex employee repeatedly directed racial slurs at them in a threatening manner while they delivered materials to the Pavex facility. While Plaintiffs testified that they found Overcash's behavior to be threatening and oppressive, the conduct does not rise to the level of atrociousness necessary to constitute a claim for intentional infliction of emotional distress. *See Vance*, 983 F.2d at n. 2 and n.7; *Williams*, 877 So.2d at 870; *Lay*, 379 So. 2d at 452; *Vamper*, 14 F.Supp.2d at 1306; *compare Ford Motor Credit Co. v. Sheehan*, 373 So. 2d 956, 959-60 (Fla. 1st DCA), *cert. dismissed*, 379 So. 2d 204 (Fla. 1979) (conduct sufficiently outrageous where creditor, in attempting to locate debtor, falsely represented to debtor's mother that debtor's children had been involved in a serious automobile accident). Therefore, Plaintiffs fail to establish sufficiently outrageous conduct and in turn, fail to establish a *prima facie* case of intentional infliction of emotional distress.

**3.    Assault**

Under Florida law, "assault is defined as an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt." *Lay v. Kremer*, 411 So.2d 1347, 1349 (Fla. 1st DCA 1990). The plaintiff's well-founded fear of imminent violence is a critical element of assault. *Viveros v. State*, 699 So.2d 822, 825 (Fla. 4th DCA 1997)

15

(analyzing fear element of criminal assault).   The plaintiff's testimony as to his "subjective perception of fear, so long as it is determined to be well-founded, is sufficient to prove the element of fear." *L.R. v. State*, 698 So. 2d 915, 916 (4th DCA 1997) (analyzing fear element criminal assault).

Plaintiffs have presented evidence which demonstrates that Overcash directed overt acts towards them which created a well-founded fear that violence was imminent.  Abrahantes testified that Overcash held his shovel in a threatening way, "like he was going to hit [Abrahantes] with the shovel" and actually struck Abrahantes's truck with the shovel.  Overcash also jumped on the ledge of Abrahantes's truck so that Overcash could "scream at [Abrahantes] close to [his] face."  Lluberes testified that Overcash smashed his hard hat on the ground and grabbed a shovel from the back of Lluberes's truck.  Lluberes testified that he believed Overcash was going to hit him with the shovel and that Overcash was trying to provoke a fistfight.  If Plaintiffs' testimony is believed, a reasonable jury could conclude that Overcash engaged in overt acts which created a reasonable fear of imminent violence.  *See Lay*, 411 So. 2d at 1349 ("while mere words do not constitute an assault, the words coupled with an appearance of rage and a just completed shove could constitute assault").

Likewise, whether Pavex should be held vicariously liable for the actions of Overcash is a question better left for the jury.  For purposes of establishing *respondeat superior* liability, an employee's conduct must have been within the scope of his employment; thus, the conduct must have: (1) been the kind he was employed to perform; (2) occurred within the time and space limits of his employment and (3) been activated at least in part by a desire to serve the master.  *Ayers v. Wal-Mart Stores, Inc.*, 941 F.Supp. 1163, 1168 (M.D. Fla. 1996) (*citing Sussman v. Florida East Coast Properties, Inc.*, 557 So. 2d 74, 75-76 (Fla. 3d DCA), *rev. denied*, 574 So. 2d 143 (Fla. 1990)).  "[W]hether one is acting within the scope of his employment is normally a jury question" unless it

16

is clear that the employee was acting only in furtherance of his own interests. *Gibbs v. Air Canada*, 810 F.2d 1529, 1532-33 (11th Cir. 1987) (*citing Lay v. Roax Laboratories, Inc.*, 379 So. 2d 451, 453 (Fla. 1st DCA 1980)).

Plaintiffs have presented evidence demonstrating that the assaults occurred within the time and space limits of Overcash's employment and while Overcash was performing his duty of supervising the asphalt delivery. Specifically, Abrahantes testified that Overcash would scream at him and throw his hat down when Overcash "thought [he was] going to do something that was not supposed to be done". Lluberes testified that Overcash called him derogatory names when he thought he was moving too slowly or in an effort to get Lluberes to help pick up spilled asphalt. Based on the record evidence, therefore, it is not clear whether Overcash's assaults were motivated purely by a personal animosity towards Plaintiffs or whether Overcash was motivated in part by the purpose of serving Pavex, namely, Pavex's interest in managing the asphalt delivery. Accordingly, this issue is better left to the jury. *See Ayers v. Wal-Mart Stores, Inc.*, 941 F.Supp. 1163, 1168 (M.D. Fla. 1996) (granting defendant's summary judgment, but recognizing that a plaintiff may defeat summary judgment where factual issues exist as to whether employee's tortious action "in some way furthered the interest of defendant" or were "at least motivated by a purpose to serve" defendant's interest). Summary judgment on Plaintiffs' assault claims is, therefore, denied. Accordingly, it is

**ORDERED AND ADJUDGED** that:

1. Defendant's motion for summary judgment on Plaintiffs' hostile work environment claims is DENIED

2. Defendant's motion for summary judgment on Plaintiffs' intentional infliction of emotional distress claims is GRANTED.

17

3.    Defendant's motion for summary judgment on Plaintiffs' assault claims is DENIED.

**DONE AND ORDERED** in chambers this 30th day of June, 2006.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to:
Counsel of Record

18